**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

**FILED**

November 21, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Christian Rodriguez_____

DEPUTY

**DR. JACK WILSON STAMPS, JR.,**
Plaintiff,

v.

**DOREEN LORENZO**, in her individual and official capacities;
**JIM DAVIS**, in his official capacity as President of the University of Texas at Austin;
**SHANE STREEPY**, in his official capacity as Chief of Police of the University of Texas at Austin Police Department;
**DEREK TRABON**, in his official capacity as Senior Director of Security & Emergency Management / Director of Emergency Management at the University of Texas at Austin;
**THE CURRENT CHAIR OF THE BEHAVIORAL RISK ASSESSMENT COMMITTEE (BRAC)**, in official capacity;
**NOELLE SEYBERT**, in her official capacity as Associate Director of Social Media Strategy, University Marketing and Communications, University of Texas at Austin;
Defendants.

**Civil Action No. 1:25-cv-00802-ADA-SH**

**FIRST AMENDED COMPLAINT FOR DAMAGES AND**

**PROSPECTIVE INJUNCTIVE AND DECLARATORY RELIEF**

**(42 U.S.C. § 1983)**

Plaintiff, Dr. Jack Wilson Stamps, Jr. ("Plaintiff" or "Dr. Stamps"), files this First Amended Complaint and alleges as follows:

**INTRODUCTION**

1.      This case arises from the University of Texas at Austin's ongoing retaliation against Plaintiff's constitutionally protected speech and from the University's continued maintenance and use of threat-assessment records about him in a manner that chills his speech and association.

2.      After Plaintiff settled earlier employment disputes with UT and dismissed those cases with prejudice in 2023, he resumed public commentary about UT administrators and institutional culture. In August 2023, Defendant Doreen Lorenzo — a senior administrator and Assistant Dean — responded by labeling Plaintiff "insane" in internal email, directing staff to monitor his speech on official UT social-media pages, and forwarding his comments to UT lawyers and the University's Behavioral Risk Assessment Committee ("BRAC").

3.      Plaintiff's comment was deleted, and his account was blocked from UT's official social-media page. At the same time, UT officials funneled his speech into an internal, law-enforcement-linked threat-assessment system — BRAC and the University of Texas Police Department ("UTPD") — that continues to maintain records associating Plaintiff with instability and risk.

4.      According to UT Austin's Emergency Operations Plan, BRAC is a current, multi-disciplinary committee that reviews, investigates, and assesses reports of troubling behaviors and situations involving staff, faculty, and unaffiliated individuals whose behavior may adversely affect the University community, with members drawn from People and Talent (HR), Legal Affairs, the Office of the Executive Vice President and Provost, and UTPD. BRAC is an ongoing

*plaintiff's first amended complaint*, pg. 2

mechanism through which the University classifies people as potential risks and disseminates those assessments to law enforcement and decision-makers.

5.    Plaintiff does not seek damages or other relief in this case for any pre-settlement conduct or for any claims that were released by the April 30, 2023 settlement agreement in his prior federal cases. Pre-settlement events are pled only as background. This lawsuit is about post-settlement retaliation beginning in August 2023 and about the continuing maintenance and use of BRAC/UTPD records that burden Plaintiff's speech and reputation today.

6.    Plaintiff seeks: (a) damages from Defendant Lorenzo in her individual capacity for post-settlement First Amendment retaliation; and (b) prospective injunctive and declaratory relief under Ex parte Young against the official-capacity Defendants to halt ongoing First Amendment violations and to correct or remove retaliatory BRAC/UTPD records.

## JURISDICTION AND VENUE

7.    This action arises under the Constitution and laws of the United States, including the First and Fourteenth Amendments and 42 U.S.C. § 1983.

8.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4).

9.    This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and Ex parte Young, 209 U.S. 123 (1908).

10.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Austin, Travis County, Texas.

**PARTIES**

11.    Plaintiff Dr. Jack Wilson Stamps, Jr. is an adult citizen of the United States and resident of Texas. He is a former professor of music and creative technology at the University of Texas at Austin and currently resides in San Antonio.

12.    Defendant Doreen Lorenzo ("Lorenzo") is an Assistant Dean and senior administrator in the College of Fine Arts and/or School of Design and Creative Technologies at UT Austin. At all relevant times, she acted under color of state law. Lorenzo is sued in her individual capacity for damages and in her official capacity for prospective injunctive and declaratory relief.

13.    Defendant Jim Davis is the President of the University of Texas at Austin and serves as the University's chief executive officer. He approves and oversees campus safety structures and the Emergency Operations Plan that incorporates BRAC and its relationship with UTPD. He is sued in his official capacity only, for prospective injunctive and declaratory relief. Any injunction or declaratory judgment shall run to the current President and any successor.

14.    Defendant Shane Streepy is the Chief of Police of the University of Texas at Austin Police Department. He is responsible for supervising law-enforcement operations on the UT Austin campus, including the maintenance and use of UTPD records generated through BRAC. He is sued in his official capacity only, for prospective injunctive and declaratory relief, and any injunction shall run to the current UTPD Chief and any successor.

15.    Defendant Derek Trabon is the Senior Director of Security & Emergency Management and Director of Emergency Management for UT Austin. His office

maintains the Emergency Operations Plan and coordinates campus emergency-management structures, including the integration of BRAC into UT's overall risk-management system. He is sued in his official capacity only, for prospective injunctive and declaratory relief, and any injunction shall run to the current incumbent and any successor.

16. Defendant the current Chair of the Behavioral Risk Assessment Committee (BRAC) ("BRAC Chair") is the UT Austin official who presides over BRAC and coordinates its review, investigation, assessment, and record-keeping concerning individuals perceived as presenting risk to the University community, including unaffiliated individuals. Plaintiff does not presently know this person's name and therefore sues by title. The BRAC Chair is sued in official capacity only, for prospective injunctive and declaratory relief, and any injunction shall run to the current BRAC Chair and any successor.

17. Defendant Noelle Seybert is the Associate Director of Social Media Strategy in University Marketing and Communications at UT Austin. Her office manages UT Austin's central social-media presence, including official UT-branded accounts on which Plaintiff's comment was posted and deleted, and sets or implements moderation practices for those forums. She is sued in her official capacity only, for prospective injunctive and declaratory relief, and any injunction shall run to the current incumbent and any successor.

## FACTUAL ALLEGATIONS

18. Plaintiff previously brought employment-related lawsuits against UT Austin, Lorenzo, and other officials. Those suits alleged First Amendment

retaliation, Title VII retaliation, and related claims arising from the non-renewal of Plaintiff's teaching contract and subsequent defamatory statements about him.

19.    In those cases, Plaintiff discovered that he had been investigated by a little-known UT committee called the Behavioral Risk Assessment Committee ("BRAC"), which generated internal records casting him as unstable and potentially dangerous. Those records were disclosed in part through open-records processes and pre-attorney-general productions. The records included colleagues' statements to BRAC and UTPD portraying Plaintiff as "unstable," "crazy," and a potential threat.

20.    Plaintiff moved to void the settlement agreement in his earlier case when he discovered the existence of BRAC and its findings, but that motion was denied as untimely. The court dismissed his attempts to reopen those cases, and Plaintiff ultimately proceeded pro se in those matters.

21.    On or about April 30, 2023, Plaintiff entered into a settlement agreement with UT resolving his earlier federal employment cases. That agreement included a release of claims and damages arising from his employment with UT and actions or inactions by UT existing as of the effective date of the settlement.

22.    Plaintiff expressly does not seek damages or other relief here for any alleged wrongful conduct by UT or its employees that occurred before April 30, 2023. Pre-settlement events are pled only to explain how BRAC operates, how Lorenzo historically treated Plaintiff, and why the University's ongoing

maintenance and use of BRAC/UTPD records about him is chilling and harmful today.

23.    BRAC is not listed in UT's public Handbook of Operating Procedures, but is described in UT Austin's Emergency Operations Plan and in internal BRAC documents and rosters.

24.    The Emergency Operations Plan describes BRAC as a multi-disciplinary committee that reviews, investigates, and assesses reports of troubling behaviors and situations involving employees and unaffiliated individuals whose behavior may pose an adverse impact to the University community, with members drawn from People and Talent, Legal Affairs, the Office of the Executive Vice President and Provost, and UTPD.

25.    BRAC's membership rosters, produced in response to Plaintiff's public-information requests, show that BRAC includes senior officials from Human Resources, the Provost's office, Legal Affairs, mental-health services, and multiple UTPD officers identified as "law enforcement." These members report into or work closely with the offices of Defendants Davis, Streepy, Trabon, and the BRAC Chair.

26.    BRAC functions as an institutional mechanism by which UT officials gather, share, and memorialize allegations and impressions that particular individuals — employees or unaffiliated members of the public — pose a risk, and by which those risk assessments can be accessed by UTPD and other decision-makers.

27.    Through repeated public-information requests beginning in or before 2021, Plaintiff learned that UT maintains a defined "BRAC evaluation" file on him. In April 2022, for example, UT's open-records office issued a cost estimate for producing "all documents related to the evaluation of Dr. Jack W. Stamps by the Behavioral Risk Assessment Committee, otherwise known as 'BRAC'." The estimate was more than Plaintiff could afford, and he was unable to obtain the complete file.

28.    When Plaintiff sought to understand how BRAC works — what policies guide it, what "instruments" it creates, what metrics it uses, to whom it reports, how long its files are kept, and how individuals can correct or contest entries — UT's responses were vague and evasive.

29.    In response to multiple public-information requests, UT declined to provide BRAC charters, manuals, or detailed operating procedures. Instead, UT provided only generic descriptions that BRAC is a "multi-disciplinary committee" that meets to review concerning behavior, and partial productions or cost estimates referencing a "BRAC evaluation" of Plaintiff without explaining how such evaluations are generated, scored, or transmitted to UTPD or other offices.

30.    UT has never provided Plaintiff with any written policy describing BRAC's decision-making standards, investigative methods, appeal process, record-retention rules, or sharing practices with UTPD or other entities. UT has never identified any mechanism by which Plaintiff can contest, correct, or remove BRAC entries that label him as unstable or dangerous.

31.    As a result, Plaintiff has been forced to piece together BRAC's existence and function from a combination of partial email productions, cost estimates, and the high-level description in the Emergency Operations Plan. UT's vagueness and evasiveness about BRAC's inner workings is part of the ongoing injury: it creates a secret risk-labeling regime that individuals cannot effectively challenge or escape.

32.    The Emergency Operations Plan and BRAC rosters confirm that BRAC is an active, institution-wide committee integrated with UTPD and emergency management and operating under the authority of Defendants Davis, Trabon, Streepy, and the BRAC Chair. It is not a historical artifact; it is a present-tense system.

33.    After the April 2023 settlement, Plaintiff resumed speaking publicly about UT administrators, institutional culture, and his experiences. He used social media, including comments on official UT Austin pages, to criticize administrators and share his music and commentary.

34.    UT Austin and its subunits maintain official social-media pages, such as Facebook and other platforms, that bear UT branding, are used to announce official programs and events, highlight faculty work, and promote UT's public image. These pages are managed and moderated by UT employees acting in their official capacities, including staff supervised by Defendant Seybert.

35.    On or about August 18, 2023, Plaintiff posted a comment and/or link on one of UT's official social-media pages relating to the School of Design and Creative Technologies and/or the College of Fine Arts. The comment criticized

UT's treatment of him and/or shared his creative work in a way that reflected negatively on the administration.

36.    In response, Defendant Lorenzo sent an internal email to UT staff referring to Plaintiff and his post. In that email, Lorenzo wrote that "insanity rules his life" and directed a subordinate to screenshot any further comments from Plaintiff and send them to her so she could forward them to UT Legal Affairs. On information and belief, those screenshots and related messages were shared with BRAC and/or UTPD.

37.    Around this same time, Plaintiff's comment was deleted from the official UT page, and his account was blocked or restricted from posting on one or more UT-run social-media pages. Plaintiff was thereby excluded from participating in a governmental communication forum on a viewpoint-neutral basis.

38.    Lorenzo's "insanity rules his life" statement, her directive to capture screenshots of Plaintiff's speech for legal escalation, and the deletion and blocking of his comment(s) were motivated by hostility to Plaintiff's criticism of UT and to his viewpoint about institutional leadership. They were undertaken under color of state law, using UT official channels, and fell within the scope of Lorenzo's authority as a UT administrator.

39.    The August 18, 2023 email and related actions were not isolated; they were consistent with Lorenzo's earlier pattern of routing Plaintiff's music and commentary into BRAC/UTPD channels during the pre-settlement period and labeling him as mentally unstable. Plaintiff seeks damages here only for the post-settlement harm caused by the August 2023 incident and its aftermath.

40.    BRAC and UTPD continue to maintain records concerning Plaintiff, including internal statements and assessments generated before the settlement and any new material created after Lorenzo's August 2023 escalation. These records are maintained and accessible under the authority of Defendants Streepy, Trabon, the BRAC Chair, and President Davis.

41.    The Emergency Operations Plan shows that BRAC remains active and integrated with UTPD and campus emergency-management structures. Its purpose is ongoing review and assessment of individuals whose behavior is perceived as risky to the University community, including unaffiliated individuals such as former employees.

42.    On information and belief, UTPD officers and BRAC members currently have access to the BRAC file and UTPD records referencing Plaintiff, and those records are available whenever his name or prior disputes with UT arise.

43.    The effects of UT Austin's BRAC/UTPD records and the "unstable/dangerous" narrative about Plaintiff have not been confined to UT Austin. After leaving UT Austin, Plaintiff applied for academic positions elsewhere in the University of Texas System, including at the University of Texas at San Antonio ("UTSA").

44.    In connection with a UTSA faculty search in 2022, text messages produced from the phone of UTSA faculty member and search-committee member Dr. Ivan Hurd show that another search-committee member, Dr. Jennifer Beavers (a UT Austin alum and former classmate of Plaintiff), stated that she "simply" did not want Plaintiff on the list, that she found him "arrogant" and "crazy," that he was

"inappropriate," and that she was "not certain about the legal thing at Austin," adding that her "Austin friend circle" had views about Plaintiff that she hoped would "wash out in the water." In the same exchange, the committee members discussed "tak[ing] out Stamps" from the short list.

45.  These UTSA texts track, almost word-for-word, the language that had already been used about Plaintiff inside UT Austin's BRAC/UTPD process and in Lorenzo's own internal communications describing Plaintiff as ruled by "insanity." The UTSA search-committee members were not reacting to independent misconduct by Plaintiff at UTSA; they were reacting to a pre-existing narrative about him that originated at UT Austin and was carried to UTSA through shared personnel, alumni networks, and information flows within the UT System.

46.  On information and belief, BRAC and/or UTPD information originating at UT Austin has been shared within the broader UT System and has influenced how Plaintiff's applications and candidacy are viewed at other UT institutions, including UTSA. As a result, Plaintiff has been effectively blacklisted from meaningful consideration for academic employment within the UT System by a combination of secret BRAC assessments and informal warnings that portray him as "crazy," unstable, or a legal problem.

47.  As a direct and foreseeable result of Lorenzo's actions and UT's ongoing maintenance and use of these records, both at UT Austin and across the UT System, Plaintiff reasonably fears that any future appearance at or near UT Austin or UTSA will trigger heightened scrutiny or an escalated law-enforcement

or administrative response based on prior BRAC/UTPD classifications; that his reputation within the UT System and among potential academic employers remains tainted by internal labels of him as "crazy," "unstable," or dangerous; and that his participation in UT-related forums, including online spaces, will be monitored and interpreted through a pre-existing threat lens rather than as ordinary protected speech.

48.    These conditions chill Plaintiff's speech and association. Although he continues to speak in some contexts, he reasonably self-censors and avoids certain forums and physical spaces because he believes UT officials, campus police, and other UT System institutions such as UTSA will treat him as a threat rather than as a critic if he engages with them.

49.    UT has never notified Plaintiff that any BRAC or UTPD records concerning him have been corrected, removed, or sealed; nor has it provided any procedure by which he can meaningfully challenge those records or their ongoing use, at UT Austin or elsewhere in the UT System.

50.    Plaintiff does not seek in this case any damages or other relief for employment decisions made by UTSA or UT System that are already the subject of separate litigation in the San Antonio Division. Those facts are pled only as context for understanding the post-settlement retaliation at UT Austin and the ongoing maintenance and spread of threat-assessment records that continue to chill his speech and association.

**CAUSES OF ACTION (42 U.S.C. § 1983)**

**COUNT I – FIRST AMENDMENT RETALIATION**

(Damages – Individual Capacity – Lorenzo Only)

49.    Plaintiff incorporates paragraphs 1–48 as if fully set forth here.

50.    At all relevant times, Plaintiff engaged in speech protected by the First Amendment, including criticism of UT administrators and public commentary about his experience with UT and its leadership, both before and after the April 2023 settlement.

51.    On or about August 18, 2023, Plaintiff posted a comment and/or link on an official UT Austin social-media page, expressing his viewpoint critical of UT and/or sharing his creative work in a way that reflected negatively on Lorenzo and other administrators.

52.    In direct response to this protected speech, Defendant Lorenzo, acting under color of state law and in her role as Assistant Dean, (a) described Plaintiff in internal email as someone whose life is ruled by "insanity," (b) directed UT staff to capture screenshots of Plaintiff's future comments and send them to her so she could forward them to UT Legal Affairs and, on information and belief, to BRAC and/or UTPD, and (c) caused or contributed to the deletion of Plaintiff's comment from at least one official UT page and caused or contributed to the blocking or restriction of his account from that page or related UT pages.

53.    Lorenzo's actions would deter a person of ordinary firmness from continuing to speak in the same manner, especially where the response to speech

is to route it into a secret threat-assessment system and law-enforcement-linked records, while simultaneously excluding the speaker from official UT forums.

54. Lorenzo's actions lacked any legitimate pedagogical or safety-based justification. They were motivated by hostility to Plaintiff's viewpoint and by a desire to punish and discredit a critic by branding him "insane" and treating his speech as a threat to be monitored.

55. Lorenzo knew or should have known that retaliating against Plaintiff for engaging in protected speech violated clearly established First Amendment law.

56. As a direct and proximate result of Lorenzo's actions in August 2023 and thereafter, Plaintiff has suffered damages, including but not limited to emotional distress, reputational harm, and ongoing fear about how UT and UTPD will treat him if he speaks or appears in UT-related spaces in the future.

57. Plaintiff seeks compensatory and, if allowed by law, punitive damages against Lorenzo in her individual capacity for the injuries caused by her post-settlement retaliatory conduct. Plaintiff does not seek damages in this Count for pre-April 30, 2023 events.

## COUNT II – FIRST AMENDMENT RETALIATION / VIEWPOINT DISCRIMINATION

(Prospective Injunctive and Declaratory Relief – Official-Capacity Defendants)

58. Plaintiff incorporates paragraphs 1–57 as if fully set forth here.

59. This Count is brought under 42 U.S.C. § 1983 and Ex parte Young against Defendants Lorenzo (official capacity), Davis, Streepy, Trabon, the BRAC Chair,

and Seybert, solely for prospective injunctive and declaratory relief to halt ongoing First Amendment violations.

60.    UT Austin's official social-media pages, including the page on which Plaintiff's August 2023 comment appeared, are governmental channels of communication. They bear UT branding, are used for official announcements, and are administered by UT employees acting with actual authority over those communications.

61.    By deleting Plaintiff's comment and blocking his account from official UT pages because of his viewpoint, UT officials administered these forums in a manner that discriminates based on viewpoint and chills protected speech.

62.    BRAC and UTPD are current mechanisms through which UT reviews, investigates, and tracks people perceived as risks to the University community, including unaffiliated individuals. BRAC's membership, including HR, Legal Affairs, the Provost's office, and UTPD, ensures that its assessments have practical consequences for how individuals are treated by both the University and law enforcement.

63.    Defendants, in their official capacities, presently have authority to maintain, access, and disseminate BRAC and UTPD records referencing Plaintiff; to set or enforce policies for how BRAC and UTPD records are used in assessing and responding to individuals, including former employees and unaffiliated persons; and to administer and set moderation policies for UT Austin's official social-media pages, including the criteria for deleting comments and blocking accounts.

64.    The ongoing maintenance and potential use of retaliatory BRAC/UTPD records about Plaintiff, combined with UT's prior viewpoint-based exclusion of him from official social-media forums and its refusal to provide any mechanism to correct or contest those records, constitutes an ongoing violation of the First Amendment.

65.    Unless enjoined, Defendants, in their official capacities, will continue to maintain and potentially disseminate BRAC/UTPD records that classify Plaintiff as unstable or dangerous based on his protected speech and prior disputes; treat Plaintiff's past and future speech through a threat-assessment lens that chills his willingness to engage with UT; and operate official social-media forums without clear, viewpoint-neutral moderation rules that prevent further viewpoint-based blocking and deletion of Plaintiff's speech.

66.    Plaintiff seeks prospective injunctive relief requiring the official-capacity Defendants to allow Plaintiff to participate in UT's official social-media forums on a viewpoint-neutral basis, subject only to reasonable, content-neutral time, place, and manner restrictions; to adopt and publicly disclose viewpoint-neutral moderation guidelines for those official UT social-media pages, including a process by which users can challenge viewpoint-based blocking or deletion; to identify, disclose to Plaintiff, and either correct, annotate, or remove BRAC and UTPD records that were created or maintained in retaliation for his protected speech and that continue to stigmatize him as unstable or dangerous; and to adopt procedures that afford individuals who are the subject of BRAC or similar

threat-assessment files a fair opportunity to contest and seek correction of speech-based risk labels.

67.    Plaintiff further seeks a declaration that the ongoing maintenance and use of BRAC/UTPD records generated or used in retaliation for Plaintiff's protected speech, without any avenue for correction or contest, violates the First Amendment, and that viewpoint-based deletion of his comments and blocking of his account from UT's official social-media pages violates the First Amendment and cannot be repeated in administering those forums going forward.

68.    Plaintiff does not seek monetary damages from any Defendant in their official capacity.

**COUNT III – DECLARATORY RELIEF**

**(28 U.S.C. §§ 2201–2202 – Prospective)**

69.    Plaintiff incorporates paragraphs 1–68 as if fully set forth here.

70.    An actual, ongoing controversy exists between Plaintiff and the official-capacity Defendants concerning UT's continued maintenance and potential use of BRAC/UTPD records referring to Plaintiff as unstable or dangerous based on his protected speech and UT's authority and inclination to exclude Plaintiff from official social-media forums on the basis of his viewpoint.

71.    Plaintiff seeks a declaration, consistent with the injunctive relief requested, that the official-capacity Defendants' ongoing maintenance and use of retaliatory BRAC/UTPD records, and their administration of official UT social-media forums in a viewpoint-discriminatory manner, violate the First Amendment.

72.    Such a declaration will clarify the parties' rights and obligations going forward and will serve a useful purpose in preventing future constitutional violations.

### JURY DEMAND

73.    Plaintiff demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. As to Count I (against Defendant Lorenzo in her individual capacity):

1.    Compensatory damages in an amount to be determined at trial for Plaintiff's post-settlement injuries, including emotional distress, reputational harm, and other non-economic damages arising from the August 18, 2023 retaliation and its aftermath;

2.    Punitive damages, to the extent permitted by law, for Lorenzo's willful and reckless disregard of Plaintiff's constitutional rights;

B. As to Counts II and III (against Defendants Lorenzo, Davis, Streepy, Trabon, the BRAC Chair, and Seybert in their official capacities):

3.    Prospective injunctive relief requiring Defendants to restore and maintain Plaintiff's access to UT Austin's official social-media pages on a viewpoint-neutral basis; adopt and publish viewpoint-neutral moderation policies for official UT social-media pages, including a process for challenging viewpoint-based blocking or deletion; identify, disclose to Plaintiff, and correct, annotate, or remove BRAC and UTPD records that classify Plaintiff

as unstable or dangerous based on his protected speech; and implement procedures that allow subjects of BRAC or similar threat-assessment files to contest and seek correction of speech-based risk labels;

4. A declaratory judgment consistent with the above that UT's ongoing maintenance and use of BRAC/UTPD records about Plaintiff, to the extent they were generated or used in retaliation for his protected speech, violates the First Amendment, and that UT's deletion of Plaintiff's comment(s) and blocking of his account from official UT social-media pages, and any repetition of such viewpoint-based moderation, violates the First Amendment.

C. Attorneys' fees and costs if Plaintiff later secures counsel and is eligible for fees under 42 U.S.C. § 1988 or other applicable authority.

D. Pre-judgment and post-judgment interest as allowed by law; and

E. Such other and further legal or equitable relief as the Court deems just and proper.

Respectfully submitted,

Dr. Jack Wilson Stamps, Jr.
Pro Se Plaintiff
325 Queen Anne Court
San Antonio, TX 78209
Tel: (210) 849-5347
Email: jackwstamps@gmail.com